UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANE M. RUFF, | ) |
| Plaintiff, | ) |
| | ) No. 14 C 9615 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| DUPAGE COUNTY, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Shane Ruff, a fifty-five year old man, worked as a Business Service Representative for DuPage County (the "County") in June and July of 2014. He believes the County fired him in July 2014 because of his gender and age and because he complained that a female co-worker was harassing him. He alleges the County is liable for sex and age discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act of 1967. The County asks for summary judgment on all of Ruff's claims. The Court grants in part the County's summary judgment motion [23] because Ruff has withdrawn his age discrimination claim and provided no argument in support of his sex discrimination claim, thus waiving that claim, but the Court denies the County's motion on Ruff's retaliation claim because Ruff has presented issues of fact as to whether his complaints to the County about his co-worker's harassment were protected activity and whether these complaints inappropriately motivated his superior to terminate his employment.

# BACKGROUND[1]

The County hired Ruff on June 15, 2014 as a Business Service Representative tasked with contacting businesses to gauge their interest in participating in a County program offering manufacturing jobs to recent high school graduates. Ruff began as a probationary employee; following to a six-month probationary period, he would transition to an at-will employee. As a Business Service Representative, he was paired with Courtney Schaber, a County Youth Career Counselor, who worked to sign up high school graduates for the manufacturing job program. Once Ruff convinced a business to participate in the job program, he then informed Schaber he had done so. Ruff and Schaber also visited participating businesses and arranged for representatives of participating companies to speak to high school graduates in information classes at participating businesses' factories and other locations.

On July 11, 2014, while Ruff and Schaber attended an information class, they spoke with a male high school graduate who indicated that his arms hurt from taking care of his infant son. Schaber told the graduate that "you build arm muscles doing that," and went to reach for Ruff's arm. Ruff stopped Schaber from touching him by touching her elbow. When Ruff and Schaber returned back to work after the class, Schaber sent Ruff an email informing him that she felt uncomfortable when he grabbed her arm. Ruff immediately forwarded the email to Lisa Schvach, his supervisor, explaining that he had stopped Schaber from touching him by blocking her arm and asking Schvach what he should do about Schaber's email. Schvach told Ruff that she would show the email to Sue Clark, her supervisor and the Director of Workplace Development, and that Schaber had "pulled this before" and claimed "people whistle at her and

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. The Court has included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. All facts are taken in the light most favorable to Ruff, the non-movant.

talk to her all the time when she is in the factories." Doc. 25, ¶ 14. On Schvach's suggestion, Ruff sent Schaber an email, edited by Schvach, reiterating a prior verbal apology.

On July 23, Schaber complained about Ruff again—accusing him of whistling at her while taking pictures during a work project. In response, Schvach, along with Schaber's supervisor, held a meeting with Schaber and Ruff, in which Schaber leveled the whistling accusation and Ruff denied the accusation and accused Schaber of lying. Ruff began shivering during the meeting, and Schvach took Ruff to another employee's office, where Ruff told Schvach that he wanted the accusations to stop and could not work in such an environment. Schvach and the other employee told Ruff that they did not understand why Schaber was making these accusations and that they were involving the human resources department.

The same day, Ruff sent an email to Schvach and Clark, informing them he wanted to stop Schaber's behavior:

> In order to protect myself from the abusive acquisitions [sic], I'd like to know my options on filling [sic] a harassment complaint against the perpetrator of the abusive acquisitions [sic]. I wish to be able to come to work and do my job without having to constantly defend myself. I would think anyone would wish that in a professional work environment. Note, I am not copying HR on this at this time I am only weighing that option.

Doc. 25, ¶ 29. Plaintiff mistakenly wrote "acquisitions" instead of "accusations." Ruff sent virtually the same email to Clark and Schvach again later that day, this time including Schaber's name in the narrative, and he privately contemplated filing a complaint against Schaber for "harassing him by accusing him of things that he did not do." Doc. 25, ¶ 33. Ruff sent the email to find out how to complain that he was being accused of harassment.

Clark understood Ruff's email to be about Schaber and that Ruff was challenging the veracity of Schaber's complaints against him. She did not believe that Schaber was alleging that

3

Ruff was sexually harassing her. Clark shared the email with Margaret Ewing, the Human Resources Director, and Heather Hudson, a human resources staff member, telling them "he is saying she is harassing him, she is saying he is harassing her. That's why we call personnel in the first place." Doc. 25, ¶ 34.

The next day, on July 24, Ruff and Schaber individually met with Ewing and Hudson. Ewing began her meeting with Ruff by noting that Ruff had been "busy" during his month working for the County and told him he was there to listen to her rather than talk. Ewing told Ruff that she did not want to hear about "outside stuff" or matters not related to County business. Ewing told Ruff to be professional, work with Schaber, and move on. Ruff asked Ewing if human resources was the correct place to file a harassment claim against Schaber, to which Ewing replied that human resources was the right place to file such a claim but told him that instead she wanted him to move on. Ruff said that if he "wished to file a complaint of harassment for the actions that Courtney's been taking against me, HR, the department, I will bring that complaint to [sic]." Doc. 25, ¶ 57. The human resources department never asked him for his version of the events that were the subject of Schaber's complaints. Ruff understood that Ewing told Schaber during her meeting with human resources that the County was not going to put up with Schaber's behavior either. Ewing and Hudson then reported back to Clark about their meetings with Ruff and Schaber.

Later that day, Clark decided that Ruff and Schaber would not be able to work together and follow Ewing and Hudson's instructions that they move on. Believing that Ruff and Schaber had shown they could not get along and exhibited unprofessional behavior that would continue, Clark decided to terminate Ruff's employment. Ruff learned about the decision on July 29, 2014 by the human resources department. On September 2, 2014, Ruff filed a charge of

discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation, age discrimination, and sex discrimination and stating that he was subjected to false allegations by a co-worker.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

Ruff alleges that the County terminated his employment because he made two complaints of harassment—in the July 24 emails to Clark and Schvach complaining about Schaber's harassment and the next day in a discussion with Ewing regarding the steps to formally make a

complaint of harassment against Schaber.[2]  Title VII prohibits employer actions that discriminate against an employee because he opposes practices that Title VII forbids or because he has charged, testified, assisted, or participated in a Title VII proceeding, hearing, or investigation. *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008).  A plaintiff alleging retaliation can prove retaliation either by the direct or indirect, burden-shifting method of proof. *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015).  Under the direct method, a plaintiff must show "(1) that he engaged in activity protected by the statute; (2) that his employer took an adverse employment action against him; and (3) that there is a causal connection between the plaintiff's protected activity and the adverse employment action." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).  Alternatively, under the indirect approach, the plaintiff must establish a *prima facie* case for retaliation and show that "(1) he engaged in a statutorily protected activity; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).  If the plaintiff establishes a *prima facie* case, the defendant has the burden to show a non-discriminatory reason for the adverse action.  *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).  If the employer does so, then the plaintiff must demonstrate that the employer's proffered reason is pretextual.  *Id.*  Ruff proceeds under the direct method.

---

[2] In his amended complaint, Ruff alleged discrimination based on his sex—male—and his age—fifty-five years old.  Ruff apparently intended to withdraw his age discrimination claim before summary judgment and then withdrew his sex discrimination claim in response to the County's motion for summary judgment in order to "focus on his Title VII retaliation claim," but he only explicitly abandoned the sex discrimination claim.  Doc. 23 at 2; Doc. 28 at 2 n.1.  However, the County moved for summary judgment with the understanding that the age claim was being withdrawn and Ruff has not objected to that characterization of his age claim.  The Court thus grants the County summary judgment on Ruff's sex and age discrimination claims.  *See Jackson v. City of Chicago*, No. 13 C 8304, 2016 WL 1056656, at *14 (N.D. Ill. Mar. 17, 2016) (plaintiff could no longer pursue discrimination claim after withdrawing it).

Ruff alleges that he engaged in statutorily protected activity by opposing harassment from a female co-worker, Schaber, on July 23, 2014 in two emails to Clark and Schvach and on July 24, 2014 during a conversation with Ewing; that he then suffered an adverse action, his termination, which Clark decided on July 24, 2014 and that Ruff learned about on July 29; and that the County fired him because of his protected activity. The County concedes that Ruff suffered an adverse employment action[3] but argues that Ruff did not engage in protected activity on July 23 and July 24, 2014 because his communications about Schaber were too informal and did not sufficiently establish that he was opposing Schaber's actions. Additionally, the County argues that Ruff has not presented evidence of a causal connection between his communications and his termination.

I. **Protected Activity**

Complaints of harassment to an employer, both formal and informal, may qualify as statutorily protected activity. *See Davis v. Time Warner Cable of S.E. Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011). On July 23, Ruff inquired about what options he had to protect himself and to complain of Schaber's accusations against him, sending two virtually identical emails. While he indicated that he did not want the human resources department involved, it was clear that he only meant he did not want to yet pursue the option of filing a formal complaint with human resources. He did want to protect himself in some way, however. Clark understood Ruff was complaining about harassment; she shared Ruff's emails with Ewing and Hudson, characterizing

---

[3] In the amended complaint, Ruff also alleges that the County retaliated against him by creating a hostile, retaliatory, and offensive work environment by treating him differently than other employees who did not complain. Doc. 13 ¶ 31. Ruff, however, does not argue at summary judgment that the County took an adverse action by creating a hostile, retaliatory, and offensive work environment. Further, the County concedes that Ruff suffered an adverse action and does not challenge a *prima facie* case of retaliation for that reason. Therefore, the Court will not address whether the County took an adverse action by creating a hostile, retaliatory, and offensive work environment.

7

his emails as "he is saying she is harassing him." Doc. 25, ¶ 34. The next day, on July 24, when confronted with additional issues related to Schaber, Ruff asked Ewing how he could file a formal complaint about Schaber's accusations against him.[4] Ewing understood the issue, telling Ruff to drop his complaints and move on. A reasonable jury could conclude that Ruff sufficiently communicated to Clark and Schvach on July 23 and to Ewing on July 24 that he opposed Schaber's allegations, which he described as, and the County's employee's understood to be, harassment.

The County argues that even if Ruff's opposed harassment, he never indicated that he was complaining about harassment based on sex or another protected class, and, therefore, his opposition was not protected activity under Title VII. Ruff needed to oppose harassment prohibited by Title VII and indicate Schaber's harassment was occurring because of sex in order for his complaints to be protected activity. *Tomanovich*, 457 F.3d at 663. "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Id.* There is no dispute that Ruff's complaints did not mention sex or any other protected category in his July 23 emails or in his conversation with Ewing—he only mentioned "harassment" and "accusations."

Although Ruff's complaints did not explicitly identify that he was opposing sex-based harassment, a complaint grounded in facts sufficient to create an inference of a connection to a protected class can constitute protected activity. *See id.* at 663–64 (determining whether record

---

[4] The County argues that Ruff only could have engaged in protected activity on July 23 by sending emails to Clark and Schvach, arguing that Ruff's July 24 verbal inquiry to Ewing to ask how to file a formal complaint with the County cannot be protected activity because the verbal inquiry was not made to and did not reach Clark, the County's decision-maker. An employer must have actual knowledge of the employee's protected activity to state a claim for retaliation. *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009). The Court therefore considers the County's argument that Clark was unaware of Ruff's July 24 conversation with Ewing as an argument that there is no causal connection between any protected activity and adverse action.

8

regarding internal grievance could characterize complaint as opposition to sexual harassment). The surrounding circumstances must lead to the inference that the County more likely than not knew that Ruff was complaining of illegal discrimination. *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 814 (7th Cir. 2011). On one hand, Clark testified that she did not think Ruff's complaint challenged sexual harassment because he never used the word "sexual harassment." On the other hand, Schaber's complaints about Ruff sparked Ruff's complaints about Schaber, and the totality of the circumstances and the context surrounding Schaber's complaints could lead a reasonable jury to believe that Schaber's complaints suggested sex-based problems and that the County should have understood that Ruff was moving to oppose sex-based harassment. First, Schaber was complaining about Ruff inappropriately interacting twice, first touching her arm and then whistling at her. Second, Schaber's complaints were repetitive and typical of her prior complaints against others, of which the County's employees were already aware—she had complained before and was complaining again about people whistling at her. Third, at least one of Schaber's complaints about Ruff could have suggested a sexually charged working relationship—Ruff said he touched her arm after she had spoken to a young man about muscles and attempted to touch Ruff's bicep. Taken together, a reasonable jury could find that the County should have understood that Ruff was attempting to stop Schaber, a woman, from harassing him because he was a man. On the whole, given that Ruff is entitled to all reasonable inferences at the summary judgment stage, the Court finds that Ruff has presented enough evidence to create a material issue of fact as to whether he engaged in protected activity.

## II.    Causal Connection

Ruff must also present evidence showing that his protected activity was a "substantial or motivating factor" in his termination and show a causal connection between the two. *Harden v.*

9

*Marion County Sheriff's Dep't*, 799 F.3d 857, 862 (7th Cir. 2015). He can do this with direct or circumstantial evidence. *Id.* Direct evidence is essentially an admission from the County that it fired Ruff to retaliate against him for his protected activity. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Indirect, circumstantial evidence, in contrast, establishes retaliation through consistent evidence—a convincing mosaic—that provides strong support for Ruff's theory in the same way a direct admission would. *Harden*, 799 F.3d at 862. This circumstantial evidence can take the form of "suspicious timing, ambiguous statements, and other bits and pieces from which an inference of retaliatory intent might be drawn; evidence that similarly-situated employees were treated differently; and evidence that the employer's stated reason for the decision was pretext." *Id.* (citation omitted) (internal quotation marks and alterations omitted); *Greengrass,* 776 F.3d at 486.

Ruff contends Clark's statements about the termination decision are direct admissions that his complaints caused his termination. While the Court is unable to find a direct admission from Clark that his complaints were the reason for his termination, the Court reviews whether Clark's description of her decision to terminate Ruff sufficiently suggests her decision was motivated by his complaints. Therefore, the Court considers Clark's reasoning, as well as other evidence, to determine if Ruff has presented the necessary circumstantial evidence to prove a causal connection between his complaints and his termination.[5]

Clark concluded that Ruff and Schaber were not going to be able to work together, and she based that conclusion on (i) her own analysis of their behavior and (ii) Ewing and Hudson's description of their July 24 individual meetings with Schaber and Ruff. Based on what Clark

---

[5] The County points out that Ruff testified that beyond suspicious timing, he could not point to anything else to show his discharge was related to his emails to Clark. *See* Doc. 25 ¶ 67. However, although Ruff himself could not think of any other circumstantial evidence of a causal connection at his deposition, he presents other evidence in his opposition to the County's motion for summary judgment.

saw and heard from Schaber and Ruff, including the July 23 meeting with Clark and Ruff's July 23 emails to Clark, Clark did not believe that the two would be able to do their jobs—she thought they had shown they could not get along and had exhibited unprofessional behavior, and she thought that their behavior was going to continue. In fact, Clark admitted that the pair's complaints were part of the behavior she thought indicated that Ruff and Schaber would be unable to work together. And the last behavior from Ruff that Clark had personally witnessed was his informal complaint to her about Schaber's allegations contained in two emails to Clark on July 23.

Clark's decision also relied on Ewing and Hudson's description of their individual meetings with Ruff and Schaber. At Ruff's individual meeting, he asked Ewing how to file a formal complaint against Schaber. Ewing's response was to confirm Ruff understood that the subject was "dead" and "done" and "over with," and that everyone needed to move on. While it is unknown what Ewing and Hudson told Clark about the meetings, it is reasonable to infer that Ewing and Hudson told Clark that Ruff had asked how to file a formal complaint. Further, Ewing admonished Ruff to "mov[e] on" from filing a complaint, Doc. 25 ¶ 25, and later that day, Clark decided that Ruff could not "move forward with the program," *id.* ¶ 79, suggesting a unity in thought between the two County employees. Therefore, a reasonable juror could infer that Clark's decision was based on Ruff's complaints looking at the information on which she relied to reach her decision to terminate him.

Ruff also supports his argument of a causal connection with evidence of the timing of his termination. The County decided to fire Ruff on July 24, 2014, one day after his July 23 email complaining that Schaber was harassing him with her false accusations and the same day he asked the human resources department how he could file a formal internal complaint against

11

Schaber.[6] In an "extreme case" where the employer acts adversely "on the heels" of protected activity, suspicious timing is enough to create a triable issue of fact as to whether there is a causal connection sufficient for a prima facie case of retaliation. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (fact-finder was needed to determine whether disabled plaintiff was discharged because she protested discrimination the day before); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 893 (7th Cir. 1999) (termination one day after FMLA plaintiff engaged in protected activity was close enough in proximity to protected activity); *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997) (sequence of events over 2–3-day period sufficient); *Johnson v. Sullivan*, 945 F.2d 976, 980 (7th Cir. 1991) (protected activity one day before discharge "supports an inference that the two are causally connected").

Finally, Ruff has presented circumstantial evidence beyond suspicious timing and Clark's stated reasons for his termination. In Ruff's July 24 meeting, Ewing told Ruff that he was not there to talk, only to listen, and that he could not file a formal complaint, and Ruff testified that he felt intimidated at the meeting. A reasonable juror could find the County employees disliked Ruff and his complaints and that Clark was motivated by this animus when she made her decision. Further, although Schaber and Ruff were fired together, the decision to terminate them did not come on the heels of Schaber's July 11 email to Ruff, which Ruff forwarded to Schvach, who said she would forward it to Clark. In fact, Schvach noted that Schaber had made previous

---

[6] The County argues that there is no causal connection between Clark's decision to terminate Ruff and Ruff's conversation with Ewing on July 24 about how he could file a formal complaint with the human resources department because Ruff did not present evidence that Clark was aware of Ruff's conversation with Ewing. *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009). The County argues that Ruff has presented no evidence that Clark was aware of Ruff's conversation with Ewing. Ruff, however, points out that Clark indicated she had received a report from Ewing on the conversation between Ruff and Ewing and that the report guided Clark's decision that Ruff and Schaber would be unable to work together. Therefore, there is a dispute of fact as to what Ewing told Clark about what Ruff said during the meeting. The County's argument therefore fails at the summary judgment stage.

complaints when she "pull[ed] this before." Doc. 25 ¶ 14. A reasonable juror could infer the County tolerated many complaints from Schaber but could not tolerate any complaints from Ruff. Similarly, a reasonable juror could infer that Schaber was fired in conjunction with Ruff in order to hide the fact that Ruff's complaints were the real reason for his termination. Even though Schaber had complained about events before she worked with Ruff, Clark did not fire Schaber after her first complaint against Ruff. A reasonable juror could infer that the County decided to fire Schaber only when it also decided to fire Ruff as a pretext.

The County argues that Ruff's termination had nothing to do with his complaints and was instead made for a non-discriminatory reason, removing two employees who could not get along. An employer has the right to make its own business decisions, good or bad, correct or incorrect, as long as they are made in good faith and with an honest belief. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 465 (7th Cir. 2016). Ruff was a probationary employee, and he had problems almost immediately at work. As Ewing said, he was busy from the start.

However, the County admits that "Clark indicated that part of the behavior that evidenced that [Ruff and Schaber] would not be able to get along was the fact that they continued to complain about each other." Doc. 29 at 9. Although Clark did not indicate the size of the role Ruff's complaints played in her decision, a reasonable jury could infer that his July 23 emails to Clark and July 24 meeting with Ewing were substantial ingredients in her decision to terminate him. The Court finds that Ruff has marshalled enough evidence to defeat summary judgment on his retaliation claim. He has demonstrated a material question of fact regarding whether he engaged in protected activity by complaining about Schaber and whether his complaints motivated Clark's decision to terminate his employment. *See Greengrass*, 776 F.3d at 487 (suspicious timing, evidence of animus, and evidence of pretext were enough to evidence to

13

defeat summary judgment motion on retaliation claim). Additionally, he has provided evidence from which a jury could infer that a discriminatory motive is more likely the reason for his termination. *See Sawyer v. Nicholson*, No. 06-CV-5907, 2010 WL 4510954, at *27 (N.D. Ill. Nov. 1, 2010) (question of fact existed as to whether protected activity motivated plaintiffs' demotion, despite explanations presented by defendant for why plaintiff was demoted). Ruff may proceed to trial, therefore, on his retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court denies the County's motion for summary judgment [23] as to Ruff's retaliation claim. The Court grants the County's motion on Ruff's age and sex discrimination claims.

Dated: July 25, 2016

SARA L. ELLIS
United States District Judge